JIM O. KEEF ET AL., ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, APPELLEES, V. STATE OF NEBRASKA, DEPARTMENT OF MOTOR VEHICLES, APPELLANT.

716 N.W.2d 58

Filed June 16, 2006. No. S-03-1306.

Jon Bruning, Attorney General, and Lynn A. Melson for appellant.

David W. Rowe, of Kinsey, Ridenour, Becker & Kistler, Stephen R. Senn, of Peterson & Myers, P.A., and Robert G. Fegers, P.L., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ., and HANNON, Judge, Retired.

CONNOLLY, J.

This appeal presents the question whether under title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12134 (2000), Congress validly abrogated Nebraska's sovereign immunity under the 11th Amendment. The specific issue is whether the State of Nebraska is immune from being sued for charging a $3 fee for handicapped parking placards. We determine that in the context of charging a fee for handicapped parking placards, Congress did not validly abrogate Nebraska's immunity under the 11th Amendment.

## BACKGROUND

The appellees, purchasers of handicapped parking placards, sued the Nebraska Department of Motor Vehicles (Department) on behalf of themselves and those similarly situated, seeking (1) recovery of a $3 fee the State charged for the placard, (2) an injunction enjoining the State from collecting the fee, and (3) attorney fees and costs. The appellees claim the fee violated the ADA and 28 C.F.R. § 35.130(f) (2000). That regulation prohibits public entities from charging a fee to recover the costs of accessibility programs designed to assist the disabled.

The Department filed an answer and (1) asserted its state sovereign immunity and alleged that Congress could not waive the State's sovereign immunity from suit, (2) denied that the fee violated the ADA, and (3) raised the statute of limitations as an affirmative defense. Both the Department and the appellees moved for summary judgment, and the appellees moved to certify the class.

The district court determined that Congress abrogated the State's sovereign immunity under title II of the ADA. It then determined that the fee violated the ADA and enjoined future

collection. The court overruled the Department's motion for summary judgment, certified the class, and granted partial summary judgment to the appellees. The Department appealed, and we dismissed for lack of jurisdiction. *Keef v. State*, 262 Neb. 622, 634 N.W.2d 751 (2001). On remand, the court determined issues concerning the distribution of claims and awarded fees. The Department appealed.

We continued oral argument pending resolution of an appeal before the U.S. Supreme Court involving issues of sovereign immunity under title II of the ADA. See *U.S. v. Georgia*, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006). After the *Georgia* decision, we ordered supplemental briefing on the effect of the *Georgia* decision on this appeal.

## ASSIGNMENTS OF ERROR

The Department assigns, rephrased and consolidated, that the court erred by (1) determining that Congress abrogated sovereign immunity under the ADA, (2) failing to consider whether the statute of limitations barred the claim, (3) determining that members of the class had standing, (4) determining the fee violated the ADA and awarding reimbursement and an injunction, and (5) awarding attorney fees. The Department also assigns the court erred in its rulings affecting reimbursement and distribution of funds.

The appellees filed a purported cross-appeal that has a separately labeled section in their combined brief, but does not include all required sections, including a separately set out assignment of error. In that section, they argue that the district court erred by denying them leave to amend their petition.

## STANDARD OF REVIEW

■ Constitutional interpretation is a question of law on which the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision by the trial court. *Pony Lake Sch. Dist. v. State Committee for Reorg., ante* p. 173, 710 N.W.2d 609 (2006).

## ANALYSIS

The Department contends that Congress did not validly abrogate Nebraska's sovereign immunity under the 11th Amendment

from claims under title II of the ADA. The 11th Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Although by its terms, the 11th Amendment applies only to suits against a state by citizens of another state, the U.S. Supreme Court has extended the 11th Amendment's applicability to suits by citizens against their own states. *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001). Congress, however, may abrogate the state's immunity when enforcing the 14th Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976). For Congress to abrogate a state's 11th Amendment immunity, it must (1) unequivocally intend to do so and (2) act under a valid grant of constitutional authority. *Board of Trustees of Univ. of Ala. v. Garrett, supra.*

Here, the first requirement is not in dispute. Congress has unequivocally expressed its intent to abrogate immunity under the ADA. The ADA specifically provides in part: "A State shall not be immune under the Eleventh Amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202 (2000).

The second requirement, however, is in dispute. The question is whether Congress acted within its constitutional authority by subjecting Nebraska to suits for damages under the ADA. In determining whether Congress acted within its authority, we look to § 5 of the 14th Amendment. The principles of state sovereignty which the 11th Amendment embodies are necessarily limited by the enforcement provisions of § 5 of the 14th Amendment. *Fitzpatrick v. Bitzer, supra.* Thus, Congress may subject nonconsenting states to suit when it does so under a valid exercise of its § 5 power. See *id.* The Court has stated that Congress' power to enforce the 14th Amendment includes the authority both to remedy and to deter violation of rights guaranteed by the amendment by " 'prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the amendment's text.' " *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. at

365, quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000). See, also, *City of Boerne v. Flores*, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997).

■ In *City of Boerne*, the Court found that Congress' enforcement power under § 5 was limited to enacting remedial legislation; Congress has no authority to enact substantive legislation that effectively redefines the scope of the 14th Amendment right. For legislation enacted under § 5 that reaches "beyond the scope of § 1's actual guarantees" to be classified as " 'remedial' " and therefore a valid exercise of Congress' § 5 power, see *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. at 360, 365, there must be "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end," see *City of Boerne v. Flores*, 521 U.S. at 520.

■ For congressional abrogation of sovereign immunity, the congruence and proportionality test has two parts. The first part requires examining the legislative history, specifically the congressional findings and purposes, to determine what specific injury Congress is attempting to address. The second requires the statutory remedy to be congruent and proportional to the injury identified in the congressional findings. *Id.*

Since the district court's February 29, 2000, order, the U.S. Supreme Court has reshaped the contours of the 11th Amendment immunity under the ADA. In *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001), the Court held that suits for damages brought by state employees against a state under title I of the ADA are barred by the 11th Amendment.

*Garrett* involved suits brought by state employees seeking money damages for violations of the ADA. The Court found that Congress expressed an intent to abrogate 11th Amendment immunity and proceeded to determine whether Congress had the power to give effect to that intent. Addressing congruence and proportionality, the Court noted that states are not required by the 14th Amendment to make special accommodations for the disabled, so long as their actions toward the disabled are rational. *Board of Trustees of Univ. of Ala. v. Garrett, supra*, citing *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).

The Court then examined whether Congress had identified a history and pattern of unconstitutional employment discrimination against the disabled. *Id.* Examining the legislative history of the ADA, the Court found that Congress had not identified such a history or pattern sufficient to satisfy the congruence and proportionality test. According to the Court, the congressional record showed only general findings of discrimination and that the great majority of incidents did not involve state activities. Such findings were insufficient to establish a pattern of constitutional violations to allow abrogation of 11th Amendment immunity. Therefore, the Court held that Congress did not validly abrogate 11th Amendment immunity.

In 2004, the U.S. Supreme Court addressed title II in the context of access to the courts. *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004). The plaintiffs in *Lane* were paraplegics who were denied access to the state court system because of their disabilities. Addressing congruence and proportionality, the Court reviewed the congressional history and examined the purposes of the ADA and title II. The Court then held that the rights protected by title II included the right of access to the courts and that Congress had validly abrogated 11th Amendment immunity.

Examining the issue, the Court stated that whether title II validly enforces constitutional rights "is a question that 'must be judged with reference to the historical experience which it reflects.'" 541 U.S. at 523. The Court noted that title II was enacted "against a backdrop of pervasive unequal treatment in the administration of state services and programs." 541 U.S. at 524.

The Court next made reference to specific examples of "systematic deprivations of fundamental rights," *id.*, such as (1) laws prohibiting disabled persons from voting, (2) prohibiting disabled individuals from marrying, (3) prohibiting disabled persons from serving as jurors, (4) instances of unjustified commitment, (4) abuse and neglect of persons committed to state mental hospitals, and (5) irrational discrimination in zoning decisions. The Court also noted that other courts' decisions also documented "a pattern of unequal treatment in the administration of a wide range of public services . . . including the penal system, public education, and voting." 541 U.S. at 525.

The Court next focused on specific congressional findings concerning the exclusion of disabled people from courthouses because of a lack of elevators, access, or interpretive services. The Court found that title II's duty to accommodate was consistent with the due process principle that a state must provide individuals a meaningful opportunity to be heard in court. Accordingly, the Court determined that title II, as it applied to the class of cases implicating the fundamental right of access to the courts, was a valid exercise of Congress' § 5 authority to enforce the guarantees of the 14th Amendment.

After *Lane*, a majority of courts limited *Lane*'s holding to circumstances involving access to the courts and, in other cases, continued to follow the principles used in *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001), to hold that Congress did not validly abrogate 11th Amendment immunity under title II of the ADA. See, e.g., *Cochran v. Pinchak*, 401 F.3d 184 (3d Cir. 2005), *vacated* 412 F.3d 500 (3d Cir. 2005); *Miller v. King*, 384 F.3d 1248 (11th Cir. 2004), *vacated and superseded* 449 F.3d 1149 (11th Cir. 2006). The Eighth Circuit has also continued to hold that *Lane* is limited in scope. See, e.g., *Bill M. ex rel William M. v. Nebraska Dept. H.H.S.*, 408 F.3d 1096 (8th Cir. 2005) (citing *Alsbrook v. City of Maumelle*, 184 F.3d 999 (8th Cir. 1999)), *vacated* 547 U.S. 1067, 126 S. Ct. 1826, 164 L. Ed. 2d 514 (2006). Although the above cases did not deal with a parking placard fee, a pre-*Lane* case has applied the congruence and proportionality test to determine that Congress did not validly abrogate 11th Amendment immunity in the context of a state charging a minimal fee for a parking placard. *Brown v. North Carolina Division of Motor Vehicles*, 166 F.3d 698 (4th Cir. 1999).

In 2006, the U.S. Supreme Court further addressed title II in *U.S. v. Georgia*, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006). That case involved a disabled prisoner's title II and 42 U.S.C. § 1983 (2000) claim that he was denied access to prison facilities and services. Although the Court granted certiorari to consider whether title II validly abrogates sovereign immunity, the Court did not squarely address the issue. The Court stated that the pro se complaint was not clear about what conduct was alleged in support of the title II claims. The Court discussed

"actual violations" of the 14th Amendment and made it clear that in those instances, title II validly abrogates 11th Amendment immunity. The court remanded for further determination of which aspects of the State's alleged conduct violated title II, the extent to which the conduct also violated the 14th Amendment, and "insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." 126 S. Ct. at 882.

■ In summary, Congress must fulfill several requirements to validly abrogate a state's 11th Amendment sovereign immunity: (1) It must act based on the authority of § 5 of the 14th Amendment and expressly indicate its intent to abrogate 11th Amendment immunity and (2) Congress must act only to enforce, not redefine, the 14th Amendment. Thus, the remedy it prescribes must be congruent and proportional to specific findings of a pattern of state constitutional violations. See, *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004); *Board of Trustees of Univ. of Ala. v. Garrett, supra.*

### CONGRUENCE AND PROPORTIONALITY OF ADA TITLE II AS APPLIED TO PARKING PLACARDS

The Department contends that abrogation of sovereign immunity under title II of the ADA is not congruent and proportional to the findings of Congress. It argues that the congressional record does not show a pattern of pervasive unconstitutional conduct by the states in providing parking services. The appellees concede that the fee does not constitute a direct violation of their constitutional rights. They argue, however, that *Lane* relaxed and broadened Congress' ability to abrogate 11th Amendment immunity under its § 5 powers and that parking is in the realm of public services that Congress was concerned about when passing the ADA.

■ We determine that Congress did not validly abrogate 11th Amendment immunity as it applies to suits for damages involving parking placard fees. The holding in *Lane* was limited by the Court to when a fundamental right, such as access to the courts, is at issue. In those cases, the congruence and proportionality test is met because Congress specifically identified concerns about

access to the courts and other such fundamental rights, and the ADA proportionally seeks to remedy the identified constitutional violations. But such a fundamental right is not at issue in the present appeal. Nor is there evidence that Congress specifically noted concern about modest fees for parking placards when it enacted the ADA.

When Congress enacted title II, it found widespread discrimination against people with disabilities, but not of the type presented by this appeal. A fee for parking placards is generally designed to recover the costs of programs provided for the benefit of disabled people. See, generally, *Brown v. North Carolina Division of Motor Vehicles*, 166 F.3d 698 (4th Cir. 1999). The congressional history does not indicate a concern that minor fees for parking placards were a form of discrimination or motivated by animus toward the class. See *id.* Instead, the fee is a rational cost-recovery measure that can assist the disabled. As the *Brown* court noted:

> The facts of this case demonstrate how far the structure of dual sovereignty has been distorted. North Carolina has maintained a long-standing program designed to benefit disabled persons through the provision of special parking spaces. In order to make the program effective, the state undertook to provide placards to those who were eligible to use the spaces. To cover the cost of the placards, North Carolina introduced the most modest of all possible fees— one dollar per year. A federal agency now seeks to deny the state even that meager option in administering the state's voluntary enforcement efforts. The United States further insists that the state may be called to answer for this alleged transgression in federal court. We hold, however, that the Eleventh Amendment forbids this course. To interpret Section 5 to abrogate the state's immunity would be a mark of profound constitutional disrespect to the role that states are meant to play within our federal system.

166 F.3d at 708.

We conclude that abrogating 11th Amendment immunity under the ADA to invalidate a fee for a parking placard is not congruent to the specific findings of Congress, which were concerned with denial of fundamental rights in providing public services. Nor is

the remedy proportional to those findings when the fee appears to be a modest cost-recovery measure and there is no evidence of animus toward the class.

The appellees argue, however, that the fee affects their access to the public services addressed in *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004), such as their ability to gain access to the courts or voting precincts. We decline to stretch a modest $3 fee into a denial of a fundamental right. A $3 fee for a movable parking placard is a very different case than *Lane*, in which a paraplegic was required to crawl unassisted up two flights of stairs in order to appear in court. In *Lane*, the congressional record supported the conclusion that Congress found a pattern of irrational discrimination. But here, the fee does not prevent physical entry into a public building and nothing in the record suggests that members of the class have been denied access to public accommodations because of the fee. Nor is there evidence that the fee was the result of irrational discrimination. See *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001). Instead, the fee is a rational method of modest cost recovery in a program meant to assist the disabled.

The appellees also argue that under *U.S. v. Georgia*, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006), *Lane* is not limited solely to cases involving access to the courts and that title II should be read broadly to abrogate sovereign immunity. *Georgia*, however, only held that immunity was abrogated for actual 14th Amendment violations. Here, the appellees concede that no such violations are at issue. *Georgia* did not address when other circumstances might give rise to abrogation of sovereign immunity.

■ Finally, the appellees argue that the fee is an illegal tax or is a taking of property without just compensation. They contend that such actions are not barred by sovereign immunity. We determine that there is no valid precedent for the appellees' arguments and determine that they are without merit.

We determine that Congress did not validly abrogate Nebraska's 11th Amendment immunity when it charged a modest fee for parking placards. Accordingly, we reverse.

### INJUNCTION AND DECLARATORY RELIEF

The appellees argue that equitable claims for injunction and declaratory relief are not subject to 11th Amendment immunity. Therefore, they argue that their equitable claims are still actionable. We determine, however, that the equitable claims are moot.

A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Johnston v. Nebraska Dept. of Corr. Servs.*, 270 Neb. 987, 709 N.W.2d 321 (2006).

Here, the State has repealed the statute charging the fee. See, 2001 Neb. Laws, L.B. 31 (codified at Neb. Rev. Stat. §§ 18-1739 to 18-1741 (Cum. Supp. 2004 & Supp. 2005)). Therefore, there is no current statute to enjoin. The appellees argue that the fee was removed because of the lawsuit and could be reinstated if the State were found to have immunity. But the remote possibility of reenacting legislation is insufficient.

## CONCLUSION

We determine that Congress did not validly abrogate Nebraska's 11th Amendment immunity under title II. We further determine that any equitable claims are moot. Accordingly, we reverse, and remand with directions to dismiss; thus, we need not address the remaining assignments of error.

We also do not address the appellees' purported cross-appeal. The brief on cross-appeal fails to assign any error. The rules regarding the manner of presenting a cross-appeal are the same as the rules applicable to an appellant's brief. *Genetti v. Caterpillar, Inc.*, 261 Neb. 98, 621 N.W.2d 529 (2001). Errors argued but not assigned will not be considered on appeal. *Demerath v. Knights of Columbus*, 268 Neb. 132, 680 N.W.2d 200 (2004). We therefore decline to address the merits of the purported cross-appeal.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

McCORMACK, J., not participating.