STATE OF NEBRASKA EX REL. HARLAND H. JOHNSON ET AL., APPELLANTS, V. HONORABLE JOHN A. GALE, SECRETARY OF STATE OF THE STATE OF NEBRASKA, ET AL., APPELLEES.

734 N.W.2d 290

Filed July 6, 2007.    No. S-06-224.

Alan E. Peterson, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellants.

Jon Bruning, Attorney General, Charles E. Lowe, and Dale A. Comer for appellees.

L. Steven Grasz, of Blackwell, Sanders, Peper & Martin, L.L.P., and Donald B. Stenberg, of Erickson & Sederstrom, P.C., for amici curiae U.S. Term Limits, Inc., and Don't Touch Term Limits-Nebraska.

HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and CARLSON, Judge.

PER CURIAM.

## I. NATURE OF CASE

This is a mandamus and declaratory judgment action filed by voters wishing to reelect three state legislators whose 2005 candidate filings for placement on the ballot were rejected by the Secretary of State, John A. Gale. Gale rejected the filings because he determined the legislators were ineligible to serve a third consecutive term under Neb. Const. art. III, § 12. This term limits section was added to the state Constitution when voters approved Initiative 415 at the general election on November 7, 2000.

Appellants claim that § 12 must be read to disqualify only incumbent legislators halfway through their second term. They contend that § 12 therefore unnecessarily burdens the right of voters to choose among political candidates because challengers to second-term legislators do not face this risk. Appellants also contend that § 12 denies them equal protection under the law because first-term legislators are not disqualified halfway through their term. The State claims that § 12 does not prevent an incumbent legislator from serving a full second term.

The district court agreed with the State's interpretation of § 12 and accordingly denied appellants' requests for (1) a declaration that § 12 infringes upon their federal constitutional rights and (2) a peremptory writ of mandamus requiring Gale to revoke his decision that the legislators were disqualified from seeking another term of office. We affirm.

## II. CONSTITUTIONAL PROVISION

Neb. Const. art. III, § 12, provides:

(1) No person shall be eligible to serve as a member of the Legislature for four years next after the expiration of two consecutive terms regardless of the district represented.

(2) Service prior to January 1, 2001, as a member of the Legislature shall not be counted for the purpose of calculating consecutive terms in subsection (1) of this section.

(3) For the purpose of this section, service in office for more than one-half of a term shall be deemed service for a term.

## III. BACKGROUND

In November 2005, Senators Dennis Byars, Marian L. Price, and Ernie Chambers submitted to Gale candidate filings for reelection. Byars and Price asked to be placed on the primary ballot in 2006; Chambers asked to be placed on the primary ballot in 2008. Byars and Price were first elected to the Legislature in 1998 and reelected in 2002. Chambers was first sworn in on January 5, 1971, and was reelected to consecutive terms thereafter, including reelections in 2000 and 2004. Also in November, Gale rejected all three filings because he determined the legislators were ineligible to serve another consecutive term.

In December 2005, appellants, who are registered voters in the districts represented by Byars, Price, and Chambers, filed this action. They asked for an alternative writ of mandamus requiring Gale to revoke his decision or to show cause for his failure to do so. In addition, they asked for (1) a peremptory writ of mandamus after the court had considered the evidence[1] and (2) a declaration that article III, § 12, violated their constitutional rights under the 1st and 14th Amendments to the U.S. Constitution. Appellants named Byars, Price, and Chambers as necessary parties, and the legislators later asked to be aligned with appellants.

### 1. APPELLANTS' ALLEGATIONS

Appellants alleged that Gale had exceeded his authority and violated their First Amendment rights of free speech and free association under the U.S. Constitution—to vote for the representative of their choice—by enforcing article III, § 12. They further alleged that their senators had been unconstitutionally denied their right to run for office and unconstitutionally placed at risk of being found ineligible to serve before the end of their 4-year terms.

Appellants' allegations centered on subsections (1) and (3) of § 12. They alleged that when read together, these subsections disqualify any representative after he or she has served more than half of a second 4-year term. Because Byars and Price had served more than half of their 2002 terms when the complaint was filed in December 2005, appellants alleged that these senators were presently subject to disqualification. Appellants claimed the plain language of the statute would require political appointees to complete the second term of any incumbent representative. Although Gale had accepted Byars' and Price's filings to seek 4-year terms in 2002, appellants alleged that this fact showed Gale had inconsistently and discriminatorily applied § 12.

Appellants also alleged that Gale had denied them equal protection of the law. They claimed the district court could not save

---

[1] See Neb. Rev. Stat. §§ 25-2158 (Reissue 1995) and 25-2159 (Cum. Supp. 2006).

§ 12 by construing it in a "nonliteral" manner because to do so would deny Byars and Price equal protection of the law. That is, Gale had already determined that Byars and Price had served more than half of a term between January 2001 and January 2003, so applying the law any differently for other senators would present an equal protection problem. Appellants further alleged that voters in Chambers' district would be particularly injured by losing an effective representative for the only non-Caucasian majority district in the state.

## 2. Secretary of State's Response

The court issued an alternative writ of mandamus. In Gale's answer and response, he alleged that because article III, § 12, did not define the word "term," it must be read in conjunction with article III, § 7. Section 7 provides that "all members shall be elected for a term of four years." When so read, Gale alleged that subsection (1) of § 12 provides that no person may serve more than two consecutive *4-year* terms and that subsection (3) only clarifies whether a legislator's service at the expiration of a 4-year term counts as a "full term" in determining whether the legislator is disqualified from serving a third term.

## 3. Appellants' Position at Show Cause Hearing

At the show cause hearing, appellants specified they were not claiming that § 12 was racially discriminatory. They also conceded that challenges to term limits had failed in other jurisdictions. But they argued they were not claiming term limits were inherently unconstitutional—only that Nebraska's term limits were unconstitutional because of the way § 12 was drafted. Appellants agreed with the district court's statement that if it decided § 12 did not make legislators ineligible to continue after they had been in office for more than half of their second term, then their argument failed.

## 4. District Court's Order

In a written order, the district court concluded that § 12 could be interpreted as disqualifying a senator after 6 years only if subsection (3) altered the meaning of a "term" for purposes of term limits. The court declined to interpret subsection (3) to be inconsistent with the 4-year definition of a term provided

in article III, § 7. It reasoned that subsection (3) addressed, in part, circumstances requiring a political appointment to fill a vacancy in the Nebraska Unicameral. The court concluded that subsection (3) was intended to resolve whether "a term counts in computing consecutive terms, and not to determine how long a term lasts. . . . It is only by torturing the plain language of the amendment that it could mean anything else."

## IV. ASSIGNMENTS OF ERROR

Appellants assign, restated, that the district court erred in (1) concluding that subsection (3) of article III, § 12, does not modify and qualify the meaning of "term" in subsection (1); (2) failing to find that article III, § 12, is unconstitutional on its face and as applied; (3) failing to find that Gale is construing and enforcing § 12 in a manner inconsistent with its plain language; (4) failing to reach the issue of whether voters in Chambers' district, in particular, were denied their First Amendment and equal protection rights, and to decide this issue in favor of appellants; and (5) failing to grant appellants' requested order for a peremptory writ of mandamus and declaratory judgment.

## V. STANDARD OF REVIEW

■ Mandamus is a law action and is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy available in the ordinary course of law.[2]

■ When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question.[3]

---

[2] *State ex rel. Upper Republican NRD v. District Judges, ante* p. 148, 728 N.W.2d 275 (2007).

[3] *Peterson v. Ohio Casualty Group*, 272 Neb. 700, 724 N.W.2d 765 (2006).

■ Here, whether the district court properly denied a peremptory writ of mandamus and declaratory relief turns upon the meaning of article III, § 12, of the Nebraska Constitution. Constitutional interpretation presents a question of law.[4]

## VI. ANALYSIS

■ The people have the power to amend the Nebraska Constitution by the initiative process pursuant to Neb. Const. art. III, § 2, which provides in part: "The first power reserved by the people is the initiative whereby laws may be enacted and constitutional amendments adopted by the people independently of the Legislature."[5]

■ A constitution represents the supreme written will of the people regarding the framework for their government.[6] The people of Nebraska may amend their Constitution in any way they see fit, provided the amendments do not violate the federal Constitution or conflict with federal statutes or treaties.[7] This court makes no attempt to judge the wisdom or the desirability of enacting initiative amendments.[8] The party challenging the constitutionality of an amendment bears the burden of establishing its unconstitutionality.[9]

### 1. PARTIES' CONTENTIONS ON APPEAL

Appellants contend that article III, § 12, operates to keep "only certain senators" from filing for candidacy, which prohibits their supporters from voting for the candidate of their choice.[10] They argue that this result is a substantial burden on First Amendment rights that requires this court to apply strict scrutiny review. In addition, appellants argue that their votes have been diluted under the Equal Protection Clause because

---

[4] See *Keef v. State*, 271 Neb. 738, 716 N.W.2d 58 (2006).

[5] See *State ex rel. Lemon v. Gale*, 272 Neb. 295, 721 N.W.2d 347 (2006).

[6] *Id.*

[7] *Hall v. Progress Pig, Inc.*, 254 Neb. 150, 575 N.W.2d 369 (1998).

[8] See *Duggan v. Beermann*, 249 Neb. 411, 544 N.W.2d 68 (1996).

[9] See *Hall v. Progress Pig, Inc.*, 259 Neb. 407, 610 N.W.2d 420 (2000).

[10] Brief for appellants at 15.

only incumbent legislators can be disqualified midway through their second term. The State contends that appellants' interpretation of § 12 is incorrect and that even if correct, § 12 is neutral and does not severely burden voting rights.

Appellants' First Amendment and equal protection claims are both based on the alleged unequal treatment that § 12 imposes on incumbent legislators. To explain why their First Amendment argument depends upon their equal protection argument, we first set out the analytical framework of a voter's First Amendment challenge to election laws.

## 2. FREE SPEECH AND ASSOCIATION

The First Amendment provides that Congress "shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The 1st Amendment's protection of speech and association for the advancement of political objectives is extended to the states through the 14th Amendment[11] and applies to both state statutes and state constitutional provisions.[12]

Among other things, the First Amendment "protects the right of citizens 'to band together in promoting among the electorate candidates who espouse their political views.'"[13] Although there is no fundamental right to seek elective office,[14] "'the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters.'"[15]

---

[11] See, *Meyer v. Grant*, 486 U.S. 414, 108 S. Ct. 1886, 100 L. Ed. 2d 425 (1988); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 107 S. Ct. 544, 93 L. Ed. 2d 514 (1986).

[12] See *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 119 S. Ct. 636, 142 L. Ed. 2d 599 (1999).

[13] *Clingman v. Beaver*, 544 U.S. 581, 586, 125 S. Ct. 2029, 161 L. Ed. 2d 920 (2005).

[14] See *Pick v. Nelson*, 247 Neb. 487, 528 N.W.2d 309 (1995), citing *Bullock v. Carter*, 405 U.S. 134, 92 S. Ct. 849, 31 L. Ed. 2d 92 (1972).

[15] *Anderson v. Celebrezze*, 460 U.S. 780, 786, 103 S. Ct. 1564, 75 L. Ed. 2d 547 (1983).

"Election laws will invariably impose some burden upon individual voters."[16] But the right to vote in any manner and the right to associate for political purposes are not absolute; the U.S. Supreme Court has recognized that states retain the power to regulate their own elections under the federal Constitution.[17] "Although [the] rights of voters are fundamental, not all restrictions imposed by the states on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates."[18]

Strict scrutiny of an election law is appropriate only if the burden on voters' associational rights is severe.[19] Reasonable and nondiscriminatory restrictions are usually supported by a state's important regulatory interests.[20] "[T]he mere fact that a State's system 'creates barriers . . . tending to limit the field of candidates from which voters might choose . . . does not of itself compel close scrutiny.' "[21]

To resolve a challenge to a state's election laws, a court must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."[22]

This scheme has become known as the *Anderson-Burdick* balancing test.[23]

---

[16] *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992).

[17] *Id.*

[18] *Anderson v. Celebrezze, supra* note 15, 460 U.S. at 788.

[19] *Clingman v. Beaver, supra* note 13.

[20] *Id.*

[21] *Burdick v. Takushi, supra* note 16, 504 U.S. at 433.

[22] *Id.*, 504 U.S. at 434, quoting *Anderson v. Celebrezze, supra* note 15.

[23] See, e.g., *Citizens for Legislative Choice v. Miller*, 144 F.3d 916 (6th Cir. 1998).

Election laws imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest.[24] But when the burden is slight, "the State need not establish a compelling interest to tip the constitutional scales in its direction."[25] If minimal scrutiny applies, "a presumption of constitutionality can be overcome only if the party challenging [an amendment's] constitutionality negates every conceivable basis that might support the amendment."[26]

This court adopted the *Anderson-Burdick* balancing test in *Pick v. Nelson*.[27] Under this test, courts in other jurisdictions have generally held that burdens imposed by voter initiatives to establish term limits for state officers do not warrant strict scrutiny review. Courts have concluded that term limit provisions are content-neutral and do not impose an undue burden on voters when weighed against the state's interests in enforcing the term limits.[28] Courts have compared term limits to other neutral eligibility restrictions on candidacy, like age and residency requirements,[29] and have concluded that even lifetime term limit bans do not severely restrict incumbents' access to the ballot when they are not prohibited from seeking a different elected office.[30]

---

[24] *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 117 S. Ct. 1364, 137 L. Ed. 2d 589 (1997).

[25] *Burdick v. Takushi, supra* note 16, 504 U.S. at 439.

[26] *Hall v. Progress Pig, Inc., supra* note 9, 259 Neb. at 418, 610 N.W.2d at 430.

[27] *Pick v. Nelson, supra* note 14.

[28] See, *Citizens for Legislative Choice v. Miller, supra* note 23; *Bates v. Jones*, 131 F.3d 843 (9th Cir. 1997) (en banc); *League of Women Voters v. Diamond*, 923 F. Supp. 266 (D. Me. 1996); *U.S. Term Limits, Inc. v. Hill*, 316 Ark. 251, 872 S.W.2d 349 (1994); *Legislature of State of Cal. v. Eu*, 54 Cal. 3d 492, 816 P.2d 1309, 286 Cal. Rptr. 283 (1991).

[29] See, e.g., *Citizens for Legislative Choice v. Miller, supra* note 23; *Bates v. Jones, supra* note 28.

[30] *Citizens for Legislative Choice v. Miller, supra* note 23; *Bates v. Jones, supra* note 28; *Legislature of State of Cal. v. Eu, supra* note 28.

Appellants' First Amendment argument focuses on the last part of the *Anderson-Burdick* test: the requirement that a court take into consideration the extent to which a state's interests make it necessary to burden a plaintiff's rights. Appellants specifically state that they are not challenging term limits in general. Their challenge is limited to their contention that § 12 imposes an unnecessary burden on voters by disqualifying only incumbent legislators midway through their second term, whereas their challengers can serve 4 years. This claim of unequal treatment between incumbents and their challengers mirrors their equal protection claim of unequal treatment between incumbents and first-term legislators. As appellants conceded to the district court, both arguments depend upon their contention that only second-term incumbents face the risk of disqualification before their 4-year term has expired. We therefore do not address the arguments separately.

### 3. EQUAL PROTECTION CHALLENGE

Appellants contend that § 12 violates the Equal Protection Clause by diluting the votes of persons wishing to reelect incumbent legislators because it operates to disqualify an incumbent legislator after the midway point of his or her second term, thus depriving voters of their elected representative. Appellants contend that nonincumbent legislators do not face this risk: "They [incumbent legislators] are not given an equal chance, even to serve a second term, with non-incumbent candidates."[31] Appellants also argue that Gale is "apparently applying the subsection (3) language only to the persons who were elected in 1998 and therefore served just over half their term between January 1, 2001, and early January, 2003."[32]

Appellants' second argument regarding Gale's application of the amendment only to legislators elected in 1998 is refuted by their own allegations and evidence. That is, Gale rejected Chambers' candidate filing for reelection in 2008, after Chambers was reelected in 2004. Thus, Gale did not apply the law only to legislators reelected in 1998.

---

[31] Brief for appellants at 18.

[32] *Id.*

### (a) Level of Scrutiny

Regarding appellants' unequal treatment claim between incumbent and first-term legislators, the State argues that appellants' interpretation of § 12 is incorrect. Alternatively, the State argues that even if appellants' interpretation were correct, strict scrutiny does not apply and that "[t]he amendment does not limit anyone's access to candidacy or the ballot based on a prohibited factor such as race, religion or gender. . . . Access will be the same as it always has been for all voters."[33] Based on this equal access argument, the State apparently assumes there is no fundamental right at stake because every voter's representative would be disqualified to serve the last 2 years of a second term, which would be only an incidental burden on voting rights.

The Equal Protection Clause keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike.[34] But when the classifications involved in a constitutional amendment do not create any suspect class or address any fundamental right, we apply only minimal scrutiny under the equal protection analysis.[35] Under this standard of review, this court will uphold a classification created by a constitutional amendment where it is a rational means of promoting a legitimate government interest or purpose.[36]

Appellants do not contend that § 12 creates a suspect classification. As noted, there is no fundamental right to seek elective office.[37] Similarly, the U.S. Supreme Court has held that voters do not have a fundamental right to vote for a particular candidate.[38] It does not follow from this, however, that voters do not have a right to be served by their chosen representative for a full term once elected. Article III, § 7, of the Nebraska

---

[33] Brief for appellees at 34-35.

[34] *In re Interest of Phoenix L.*, 270 Neb. 870, 708 N.W.2d 786 (2006).

[35] *Hall v. Progress Pig, Inc., supra* note 9.

[36] See *id.*

[37] See *Pick v. Nelson, supra* note 14.

[38] See, *Timmons v. Twin Cities Area New Party, supra* note 24; *Burdick v. Takushi, supra* note 16.

Constitution provides that members of the Legislature "shall be elected for a term of four years."

Further, even applying minimal scrutiny, disqualifying only second-term legislators midway through their term is not rationally related to the main purpose of term limits: to eliminate incumbent election advantage.[39] If incumbent legislators are disqualified from running again for a 4-year period following the expiration of their second term, a political appointment for the last 2 years of their second term is unnecessary to eliminate incumbent election advantage. Thus, we reject the State's argument that appellants' interpretation of § 12 would not create a constitutional infirmity. Regardless of what level of review this court applies, the resolution of appellants' First Amendment and equal protection challenges hinges on the correct interpretation of § 12.

### (b) Meaning of Article III, § 12

Appellants argue that for legislators like Chambers, who were elected in 1996 and 2000, both these terms expired after the January 1, 2001, effective date in subsection (2): their first term expired on January 3, 2001, and their second term expired on January 5, 2005.[40] Appellants argue that under subsection (1), these legislators should have been disqualified from seeking reelection in 2004 because subsection (1) disqualifies legislators from a third consecutive term after the expiration of two consecutive terms. But under subsection (3), which provides that "service in office for more than one-half of a term shall be deemed service for a term," they were nonetheless allowed to run for office again because their 1996 terms did not count as service for a term after the effective date. According to appellants, this shows that the full-term calculation under subsection (3) must be incorporated into subsection (1) to determine whether a term has expired.

Appellants further argue that this incorporation is demonstrated by Gale's determination that Byars and Price had served more than half of their 1999 terms after the amendment's

---

[39] See, e.g., *Bates v. Jones, supra* note 28.

[40] See Neb. Const. art. III, § 10.

effective date of January 1, 2001. They then contend that this incorporation shows the subsection (3) calculation has altered the meaning of a "term" in subsection (1) so that "service of more than one-half a term [is] the same as expiration of a term."[41] Thus, they argue § 12 disqualifies all incumbent legislators "from the moment they have passed the midpoint of their second term" and that subsection (1) must be read to incorporate the following underscored language: "No person shall be eligible to serve as a member of the Legislature for four years next after the expiration of service for more than one-half of each of two consecutive terms regardless of the district represented."[42]

In ascertaining the intent of a constitutional provision from its language, however, this court may not supply any supposed omission, or add words to or take words from the provision as framed.[43] The additional language that appellants contend must be read into subsection (1) illustrates that their interpretation is not consistent with its plain language. Without this italicized language, the meaning of subsection (1) is clear and appellants' sophistic argument cannot mask the structural simplicity of § 12.

Constitutional provisions are not open to construction as a matter of course; construction is appropriate only when it has been demonstrated that the meaning of the provision is not clear and therefore construction is necessary.[44]

The words in a constitutional provision must be interpreted and understood in their most natural and obvious meaning unless the subject indicates or the text suggests that they are used in a technical sense.[45] If the meaning is clear, the court will give to it the meaning that obviously would be accepted

---

[41] Brief for appellants at 28.

[42] *Id.* at 27-28.

[43] *State ex rel. Lemon v. Gale, supra* note 5; *Pony Lake Sch. Dist. v. State Committee for Reorg.,* 271 Neb. 173, 710 N.W.2d 609 (2006).

[44] *City of Elkhorn v. City of Omaha,* 272 Neb. 867, 725 N.W.2d 792 (2007).

[45] *Id.*

and understood by laypersons.[46] Constitutional provisions are not subject to strict construction and receive a broader and more liberal construction than do statutes.[47] It is the duty of courts to ascertain and to carry into effect the intent and purpose of the framers of the Constitution or of an amendment thereto.[48]

A layperson would understand from the plain language of subsection (1) that a legislator is disqualified to serve for another consecutive term *"after the expiration of* two consecutive terms." (Emphasis supplied.) Under appellants' interpretation, however, a legislator is disqualified from serving a third consecutive term *before the expiration of* two consecutive terms. Thus, appellants' interpretation is contrary to the plain language and natural sense of subsection (1).

Nor is there any reason to incorporate the full-term calculation from subsection (3) into subsection (1) because all the subsections have distinct functions. Subsection (1) prohibits a third term for a 4-year period after two consecutive terms have expired. Subsection (2) specifies that term limits apply only prospectively to a legislator's time served on or after January 1, 2001. At the time the initiative was passed, however, prospective application raised the problem of how to count a legislator's current term as of the effective date. This is the problem that subsection (3) was most obviously intended to address, although the State and district courts have noted possible future applications of subsection (3). That is, subsection (3) was primarily intended to determine whether a legislator's current term on January 1, 2001, would count toward disqualifying the legislator from a third consecutive term. If more than one-half of the then-current term was served after the effective date, the term would count toward disqualification for a third term, but not otherwise.

This is exactly the manner in which Gale has applied it. Significantly, appellants did not allege that Gale determined any second-term legislator is disqualified halfway through his or her term, and we take judicial notice of Chambers' current represen-

---

[46] *Hall v. Progress Pig, Inc., supra* note 9.

[47] See, *id.*; *Carpenter v. State*, 179 Neb. 628, 139 N.W.2d 541 (1966).

[48] *Pony Lake Sch. Dist. v. State Committee for Reorg., supra* note 43.

tation of his district despite having served more than half of his second consecutive term according to appellants' evidence.[49]

Byars and Price were elected in 1998. That term began on January 6, 1999, and expired January 8, 2003, so they served more than half of their 1998 term on or after January 1, 2001. Under subsection (3), therefore, their 1998 term counted as their first consecutive term after January 1, 2001, and their reelection in 2002 counted as their second consecutive term. Thus, Gale properly determined they were disqualified from seeking a third consecutive term in 2006. Chambers' 1996 term began on January 8, 1997, and expired January 3, 2001, so he served only 2 days of that term on or after January 1, 2001, meaning that under subsection (3), his 1996 term did not count as one of his consecutive terms. Chambers' 2000 term therefore counted as his first consecutive term, and his 2004 term counted as his second consecutive term. Applying § 12 in a straightforward manner disqualifies Chambers from seeking a third consecutive term in 2008. Subsection (3) did not, and does not, operate to disqualify any incumbent legislator at the midway point of a second term.

The district court also correctly noted that appellants' interpretation of § 12 would cause a conflict with article III, § 7, which defines a legislator's "term" as 4 years. If subsection (3) were interpreted to mean that "service in office for more than one-half a term" is the same as expiration of a term, then subsection (3) would amend article III, § 7, by implication.[50]

The Nebraska Constitution, as amended, must be read as a whole.[51] A constitutional amendment becomes an integral part of the instrument and must be construed and harmonized, if possible, with all other provisions so as to give effect to every section and clause as well as to the whole instrument.[52]

---

[49] See *State v. Kolosseus*, 198 Neb. 404, 253 N.W.2d 157 (1977).

[50] Compare *Duggan v. Beermann, supra* note 8.

[51] *Father Flanagan's Boys Home v. Dept. of Soc. Servs.*, 255 Neb. 303, 583 N.W.2d 774 (1998).

[52] See *id.*

██ Reading the constitution as a whole and giving § 12 the meaning that would obviously be accepted and understood by laypersons, we agree with the district court that subsection (3) of § 12 operates only to determine whether an expired legislative term will count as a full term toward disqualification to seek a third consecutive term.

### 4. First Amendment and Equal Protection Conclusion

As noted, the Equal Protection Clause keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike.[53] But appellants have failed to show that the full-term calculation in subsection (3) requires a different application for incumbent and nonincumbent legislators. Different outcomes do not necessarily demonstrate different treatment under the law. Equally important, appellants have failed to show that § 12 disqualifies incumbent legislators after they have been in office for more than half of their second term. Thus, § 12 does not infringe upon any fundamental right. Accordingly, this court applies minimal scrutiny, and the burden is on appellants to show that the amendment is not rationally related to achieving any legitimate state purpose.[54] In other words, a presumption of constitutionality can be overcome only if the party challenging its constitutionality negates every conceivable basis that might support the amendment.[55]

Regardless of whether this court agrees with the wisdom or desirability of term limits, the State has cited rational bases for its enforcement of § 12, including restoring voter participation, competitive elections, and citizen representation by eliminating incumbent election advantages.[56] Appellants do not attempt to negate these rationales because their entire argument depends upon an interpretation of § 12 that we reject. We conclude that

---

[53] *In re Interest of Phoenix L., supra* note 34.

[54] See *Hall v. Progress Pig, Inc., supra* note 9.

[55] *Id.*

[56] See, *U.S. Term Limits, Inc. v. Hill, supra* note 28; *Legislature of State of Cal. v. Eu, supra* note 28. See, also, *U. S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 115 S. Ct. 1842, 131 L. Ed. 2d 881 (1995).

appellants' equal protection argument must fail. Because appellants' First Amendment claim also depends solely upon their claim of unequal treatment, that claim must fail as well.

### 5. MINORITY VOTERS

Finally, appellants assign that the district court erred in failing to reach the issue of whether voters in Chambers' district, in particular, were denied their First Amendment and equal protection rights because they lost an effective representative for the only district in the state with a majority of voters who are of a minority race. At the show cause hearing, however, they specifically conceded this was not a racial discrimination claim. These statements effectively informed the district court that it need not address this claim on the basis of racial discrimination or suspect classifications.

A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal.[57] In addition, as the State has pointed out, there is no merit to this argument. Section 12 applies to a legislator from any district, and the Sixth Circuit has concluded that because term limit provisions burden all voters the same, a claim that a minority district is disproportionately affected by losing an effective legislator will not support a claim that the term limit provision imposes a severe burden on those voters' rights.[58]

### VII. CONCLUSION

Appellants have failed to show that Nebraska's term limit amendment imposes a severe burden on their First Amendment rights or that it violates the Equal Protection Clause. Both claims depended upon their contention that article III, § 12, disqualifies any incumbent legislator after serving more than half of his or her second term. We conclude that appellants' interpretation of § 12 is contrary to its plain and obvious meaning. We agree with the district court's conclusion that subsection (3) determines whether an expired term counts as one of the two consecutive terms a legislator is permitted to serve before being disqualified

---

[57] *Mason v. City of Lincoln*, 266 Neb. 399, 665 N.W.2d 600 (2003).

[58] See *Citizens for Legislative Choice v. Miller, supra* note 23.

to seek a third consecutive term. We further agree that subsection (3) has no application to determining the length of term under subsection (1). We therefore affirm the district court's denial of a peremptory writ of mandamus and declaratory judgment.

AFFIRMED.

WRIGHT, J., not participating.